# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeremy James Allen,<br><br>        Plaintiff,<br><br>v.<br><br>Cheryl Piepho, Charles Brooks, and Paul Schnell, each in their Individual Capacities, and the Minnesota Department of Corrections,<br><br>        Defendants. | Case No. 21-cv-02689 (SRN/ECW)<br><br><br><br>**ORDER ON DEFENDANTS'**<br>**MOTION TO DISMISS** |

Phillip F. Fishman, Phillip Fishman Law Office, 825 Nicollet Mall, Suite 1600, Minneapolis, MN 55402; and Vincent J. Moccio, Bennerotte & Associates, P.A., 3085 Justice Way, Suite 200, Eagan, MN 55121, for Plaintiff.

Janine Wetzel Kimble and Kathleen M. Ghreichi, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants Cheryl Piepho, Charles Brooks, Paul Schnell, and the Minnesota Department of Corrections' ("DOC") Motion to Dismiss the Amended Complaint ("Motion to Dismiss") [Doc. No. 27]. For the reasons set forth below, the Court denies Defendants' Motion to Dismiss.

1

## I.  BACKGROUND[1]

At all times relevant to this action, Mr. Allen was an inmate incarcerated at Minnesota Correctional Facility – Faribault. (Am. Compl. [Doc. No. 21] ¶ 5.)

### A.  Mr. Allen's Injury and Treatment

On December 3, 2017, Mr. Allen fell out of his bunk and injured his right hand. (*Id.* ¶ 12.) He was taken to District One, a local hospital, where he was evaluated by Dr. Armitage.[2] (*Id.* ¶ 13–14.) Dr. Armitage diagnosed Mr. Allen with fractured third and fourth metacarpals, placed his hand in a posterior splint, and "advised him to return to the hospital in two or three days for further care." (*Id.* ¶ 14.) The next day, Defendant Cheryl Piepho sent a message for urgent follow-up care to Centurion of Minnesota, LLC ("Centurion"), a corporation with which the Minnesota Department of Corrections ("MN DOC") contracts to provide medical treatment services to inmates. (*Id.* ¶ 10, 14.) Ms. Piepho noted this follow-up request in Mr. Allen's medical chart. (*Id.* ¶ 14, 19.)

Mr. Allen saw Dr. Armitage again on December 6. (*Id.* ¶ 15.) Due to pain and swelling in his right hand, Dr. Armitage was unable to cast or further treat the injury. (*Id.*) He instructed Mr. Allen to return in two weeks for "possible surgery intervention." (*Id.*) Defendant Piepho and Defendant Charles Brooks both noted in Mr. Allen's medical chart that Mr. Allen had seen Dr. Armitage that day and was supposed to return for a follow-up

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court accepts as true the factual allegations in the complaint and construes all reasonable inferences arising therefrom most favorably to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citing *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999)).

[2] The Amended Complaint does not provide Dr. Armitage's full name or other details regarding his position. (*See generally* Am. Compl. ¶ 14–17.)

appointment in two weeks. (*Id.* ¶ 16, 20, 21.) Consequently, they acknowledged Mr. Allen should have returned for care on December 20, 2017. (*Id.* ¶ 25.) Instead, a medical chart note reflects that on December 26, a request for an orthopedic consult was submitted as "urgent" but changed to "priority" by a Centurion employee. (*Id.* ¶ 22.)

Thus, contrary to Dr. Armitage's instructions, Mr. Allen did not see Dr. Armitage again until January 23, 2018, more than four weeks later. (*Id.* ¶ 16.) By that time, Dr. Armitage could not perform surgery because Mr. Allen's fractured hand had healed in an improper manner. (*Id.* ¶ 17.) The physical therapy that Dr. Armitage ordered as a substitute for surgery did not cure Mr. Allen's condition. (*Id.*)

Mr. Allen alleges that he experienced severe physical and psychological suffering between his December 6, 2017 appointment and his belated appointment on January 23, 2018. (*Id.*) He alleges that, as a result of the delay, he is "now permanently disabled; his hands and nerves are weakened and deformed; he cannot make a closed fist and he has lost a significant range of motion[;]" and that he suffered and continues to suffer from "excruciating pain." (*Id.* ¶ 32.)

**B. This Lawsuit**

Mr. Allen commenced this action in Ramsey County District Court on November 10, 2021, initially naming as Defendants: Paul Schnell, Minnesota Commissioner of Corrections, in his official capacity; James Amsterdam, Medical Director of the MN DOC, in his individual and official capacity; Edward Shaman, M.D., Alyas Mashih, M.D., and Gene Kliber, P.A., each in their individual and official capacities; John and Jane Does A–F, each in their individual and official capacities; and Centurion. (Notice of Removal [Doc.

3

No. 1], Ex. A (Compl.) at 1.) Defendants Shaman, Mashih, Kliber, and Centurion removed the lawsuit to federal court on December 17, 2021 in light of Mr. Allen's federal claims brought pursuant to 42 U.S.C. § 1983. (Notice of Removal.)

In accordance with the parties' joint stipulation, the Court dismissed without prejudice Defendants Dr. Amsterdam and Commissioner Schnell on January 11, 2022. [Doc. No. 13.] On April 29, 2022, the Court granted Mr. Allen leave to amend his complaint. [Doc. No. 20.] The Amended Complaint names as Defendants Dr. Shaman, Dr. Mashih, Mr. Kliber, Rita Iverson, Cheryl Piepho, Charles Brooks, and Mr. Schnell, each in their individual capacities, the MN DOC, and Centurion. (Am. Compl. at 1.)

Mr. Allen alleges five causes of action. (*Id.* ¶ 34–58.) Count I alleges violations of Mr. Allen's Eighth and Fourteenth Amendment rights to receive adequate medical care by Defendants Shaman, Mashih, Kliber, Iverson, Piepho, and Brooks. (*Id.* ¶ 34–39.) Count II alleges medical malpractice by Defendants Shaman, Mashih, Kliber, Iverson, Piepho, Brooks, and Centurion. (*Id.* ¶ 40–45.) Count III alleges inadequate hiring, retention, training, and supervision by Defendants Schnell and Centurion. (*Id.* ¶ 46–51.) Count IV alleges that the MN DOC violated Mr. Allen's Eighth and Fourteenth Amendment rights to receive adequate medical care. (*Id.* ¶ 52–58.)

Defendants MN DOC, Brooks, Piepho, and Schnell moved to dismiss the claims against them on June 30, 2022. [Doc. No. 27.] In his memorandum in opposition, Mr. Allen voluntarily agreed to dismiss Count II against Defendants Piepho and Brooks, Count III against Commissioner Schnell, and Count IV against the MN DOC. (Pl.'s Opp'n [Doc. No. 38] at 1.) In addition, after the parties completed briefing and pursuant to their stipulation,

4

the Court dismissed with prejudice Defendants Shaman, Mashih, Kliber, Iverson, and Centurion. [Docs. No. 49, 54.]

Thus, the sole remaining claim to be adjudicated on this Motion to Dismiss is Mr. Allen's allegation that Defendants Piepho and Brooks violated his Eighth and Fourteenth Amendment rights to receive adequate medical care, Count I. (Pl.'s Opp'n at 1.) Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that Mr. Allen has failed to plead a plausible claim for relief because they are entitled to qualified immunity from suit. (Defs.' Mem. [Doc. No. 30] at 7–13; Defs.' Reply [Doc. No. 44] at 3–12.) In response, Mr. Allen argues that he has adequately pleaded sufficient facts to defeat qualified immunity. (Pl.'s Opp'n at 5–11.)

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation and internal quotation marks omitted).

Finally, where a motion to dismiss is based on an affirmative defense, such as qualified immunity, the moving party must show that it is entitled to the defense on the face of the complaint. *Dadd v. Anoka Cnty.*, 827 F.3d 749, 754 (8th Cir. 2016).

## III. DISCUSSION

Defendants argue that Mr. Allen fails to state a claim upon which relief can be granted because they are entitled to qualified immunity from suit. (Defs.' Mem. at 8–13.)

Qualified immunity "shields government officials from liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Ivey v. Audrain Cnty.*, 968 F.3d 845, 848 (8th Cir. 2020)). The Court analyzes qualified immunity in two parts, which it may address in any order: "(1) whether there has been a

violation of a constitutional right; and (2) whether that right was clearly established at the time of the violation." *Id.*; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants contend that Mr. Allen's allegations satisfy neither prong. (Defs.' Mem. at 8–13.) For his part, Mr. Allen counters that he has pleaded sufficient facts to demonstrate both a violation of a constitutional right and that the right was clearly established at the relevant time. (Pl.'s Opp'n at 5–11.)

## A. Violation of a Constitutional Right

Mr. Allen alleges that Defendants Piepho and Brooks were deliberately indifferent to his serious medical need in violation of his Eighth and Fourteenth Amendment rights. (Am. Compl. ¶ 34–39.)

As an initial matter, Mr. Allen's assertion of a claim under the Fourteenth Amendment is superfluous. "Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286 (1999) (quotation omitted). In Mr. Allen's case, the Eighth Amendment provides such explicit protection. *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (holding that in cases involving prison inmates, "the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause."). Perhaps in recognition of this, Mr. Allen does not address the Fourteenth Amendment in his briefing. (*See generally* Pl.'s Opp'n.) Thus, the Court will assess Mr. Allen's allegations under the Eighth Amendment only.

7

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cleaned up) (citation omitted). To state a claim for deliberate indifference, Mr. Allen must plausibly allege "(1) an objectively serious medical need, and (2) that the defendant knew of and disregarded that need." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021).

Under the first prong, an objectively serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)). "When an inmate claims that a delay in medical care violates the Eighth Amendment, 'the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment.'" *Redmond*, 999 F.3d at 1121 (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original)).

Under the second prong, to show deliberate indifference, Mr. Allen must allege that Defendants knew "he faced a substantial risk of harm and did not respond reasonably to that risk." *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 802 (8th Cir. 2022). Alleging negligence is not enough; deliberate indifference requires a subjective mental state "akin to that of criminal recklessness." *De Rossitte*, 22 F.4th at 802 (quoting *Blair v. Bowersox*, 929 F.3d 981, 987–88 (8th Cir. 2019)). However, an official's knowledge of a substantial risk of harm may be inferred from circumstantial evidence, including from the fact that the risk was obvious.

*Dadd*, 827 F.3d at 755 (citing *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997) and *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)).

Here, Defendants do not appear to contest that Mr. Allen has plausibly alleged that he suffered from a serious medical need. Rather, they argue that he has not alleged any facts "showing that Defendants Piepho and Brooks knew that Plaintiff had a serious medical need but consciously disregarded it." (Defs.' Mem. at 11.) The Court disagrees.

First, the Amended Complaint alleges facts demonstrating that both Ms. Piepho and Mr. Brooks knew of Mr. Allen's serious injury and need for follow-up care. The Amended Complaint discusses the prison's Progress Notes regarding Mr. Allen's medical care, a copy of which Defendants submitted with their memorandum. (Am. Compl. ¶ 18–21; Ghreichi Decl. [Doc. No. 31], Ex. A (Progress Notes) at 2.) Because they are directly quoted in the Amended Complaint, the Court finds that these Progress Notes are embraced by the Amended Complaint and can be considered on Defendants' Motion to Dismiss. *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) ("When deciding a motion to dismiss, a court may consider . . . documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." (citation omitted)).

The Progress Notes reflect that on December 4, 2017, Defendant Piepho wrote, "Request for Centurion for Urgent FU re R Metacapals [sic]." (Progress Notes at 2.) Next, on December 6, Defendant Brooks wrote, "Returned from Dr. Armitage – ortho f/u. Consult completed 2 wk f/u, Ø use R hand except meds . . . Packet out for Provider review." (*Id*.) The following note, written the same day by Defendant Piepho, states: "Seen by Dr.

Armitage for ortho FU. Dictation returned. Will put out for MD to review." (*Id.*) These notes show that Defendants not only knew that Mr. Allen had an injured hand, they knew it was broken, that he could not use it, and that in two weeks he needed to return to Dr. Armitage.

Moreover, the entries from December 3 explain in further detail the nature of Mr. Allen's injury, including that his hand was "deformed," exhibited "significant swelling," and had "limited" and "impaired" range of motion. (*Id.*) These entries also state that Mr. Allen would be prescribed a "standing order for Ibuprofen," suggesting that his hand caused him continuous pain. (*Id.*) As they are written directly above Defendants' entries on the same page of the Progress Notes, (*id.*), the Court finds it reasonable to infer that Defendants read the December 3 entries before making their own notes below.

Next, with this knowledge, Defendants failed to ensure that Mr. Allen was seen again within two weeks according to Dr. Armitage's instructions. (Am. Compl. ¶ 25, 36–37.) Prison personnel can demonstrate deliberate indifference by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Rusness*, 31 F.4th at 614 (quoting *Estelle*, 429 U.S. at 104–05); *see also Dadd*, 827 F.3d at 755 ("Delay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically serious or painful in nature." (quoting *Johnson-El v. Schomehl*, 878 F.2d 1043, 1055 (8th Cir. 1989))). In addition, "[a]n obvious risk of harm justifies an inference that an official subjectively disregarded a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 917 (8th Cir. 2011).

Despite knowing that Mr. Allen had a broken, visibly deformed hand, which he was unable to use and which was painful, and that Dr. Armitage had prescribed follow-up care within two weeks of December 6, Defendants appear to have taken no action to ensure that he timely received this follow-up care. *Dadd*, 827 F.3d at 755 (finding plausible claim for deliberate indifference where prison "deputies failed to distribute [the plaintiff's] Vicodin prescription despite their awareness of the medication and [the plaintiff's] pain."); *see also Croft v. Hampton*, 286 F. App'x 955, 956–957 (8th Cir. 2008) (reversing summary judgment based on evidence of a failure to follow the prescribed medical protocol for an obviously broken foot, including referral to an orthopedist within 24 hours). The Court can infer that Defendants "subjectively disregarded a substantial risk of serious harm" based on their knowledge of an "obvious risk of harm" to Mr. Allen from his broken hand. *Schaub*, 638 F.3d at 917.

Importantly, Mr. Allen's follow-up appointment did not occur until more than four weeks later than Dr. Armitage recommended. "No bright line exists" for determining how great a delay constitutes deliberate indifference. *Dadd*, 827 F.3d at 756. Given Mr. Allen's allegations that the delay here left him permanently disabled and in significant pain, (Am. Compl. ¶ 27–32), the Court finds that four weeks is sufficient to form the basis of a constitutional violation. *See Johnson v. Cook*, 481 F. App'x 283, 284–85 (8th Cir. 2012) (finding plausible claim for deliberate indifference where one month had elapsed between tentative diagnosis of fractured wrist and follow-up appointment confirming fracture, and during that month the plaintiff had suffered pain).

Defendants argue, based on extrinsic evidence, that they lacked the authority to schedule Mr. Allen's follow-up appointments. (Defs.' Reply at 6–8.) Submitted with Mr. Allen's opposition brief, one of these extrinsic documents describes the respective responsibilities of DOC staff and Centurion in scheduling offsite healthcare. (Moccio Decl. [Doc. No. 39], Ex. 1.) Because this document adds new facts not embraced by the Amended Complaint, the Court may not consider it on a motion to dismiss. *Hamm*, 187 F.3d at 948. Defendants' arguments relying on this document are therefore premature. Extrinsic evidence aside, Defendant Piepho's Progress Notes entry from December 4—"Request to Centurion for Urgent FU"—belies the suggestion that she had *no* role in scheduling Mr. Allen's medical care.

In sum, taking the facts in the Amended Complaint as true and construing all reasonable inferences in favor of Mr. Allen, Mr. Allen has plausibly alleged that Defendants knew of his serious, painful injury of a broken hand and did not act to ensure that he received the recommended treatment. Thus, Mr. Allen has plausibly alleged a violation of his Eighth Amendment right to adequate medical care and satisfied the first step in the qualified immunity analysis.

**B. Right Clearly Established at Relevant Time**

Defendants next argue that, even if Mr. Allen has pleaded a plausible violation of the Eighth Amendment, they are still entitled to qualified immunity because Mr. Allen cannot show that his Eighth Amendment right was clearly established at the time of the violation. (Defs.' Mem. at 12–13; Defs.' Reply at 8–11.)

Defendants contend that Mr. Allen must identify authority "holding that an office administrative specialist (OASS) or registered nurse (RN), who documents a specialist physician's recommendation for a follow-up orthopedic consultation within a given timeframe and places the chart note out for review by the facility's medical provider, has shown deliberate indifference toward a prisoner's serious medical needs." (Defs.' Mem. at 12–13.)[3] In response, Mr. Allen argues that Defendants' framing of the right in question is overly specific. (Pl.'s Opp'n at 10.) He asserts that, instead, "the notice required is simply whether [Defendants] violated Mr. Allen's rights by failing to see that he received the outside treatment they knew he had been prescribed." (*Id.*)

In determining whether the right at issue was clearly established at the relevant time, the Eighth Circuit takes a "broad view" of the sources of clearly established law and permits courts to consider "all available decisional law, including decisions of state courts, other circuits and district courts." *Buckley v. Rogerson*, 133 F.3d 1125, 1129 (8th Cir. 1998). Plaintiffs must introduce either "controlling precedent with a close correspondence to the particulars of the present case," *Rusness*, 31 F.4th at 614, or "a robust consensus of cases of persuasive authority[,]" *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The right must be construed "fairly narrowly" and the "facts in the present case must align with facts in precedent."

---

[3] Defendants state that Defendant Piepho is an "Office Administrative Specialist Sr." ("OASS") and that Defendant Brooks is a "registered nurse" ("RN"). (Defs.' Mem. at 3.) As new facts not contained within the Amended Complaint, these employment details cannot be considered by the Court on a motion to dismiss. *Hamm*, 187 F.3d at 948.

13

*Rusness*, 31 F.4th at 614. In essence, officials must have had "fair warning" of the unconstitutionality of their actions. *Dadd*, 827 F.3d at 757.

The Court finds Defendants' description of the right at issue, and the authority necessary to establish it, excessively narrow. It is true that "[t]he Supreme Court has cautioned courts not to define clearly established law at too high a level of generality." *Ivey*, 968 F.3d at 849 (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). However, there "need not be a prior case directly on point." *Thurmond*, 972 F.3d at 1012 (quotation omitted); *see also Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010) (rejecting the idea that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

As authority establishing his constitutional right, Mr. Allen points principally to *Miller v. Schoenen*, 75 F.3d 1305 (8th Cir. 1996). (Pl.'s Opp'n at 10.) In *Miller*, an inmate who had undergone a heart transplant prior to incarceration alleged that the defendants exhibited deliberate indifference by not providing him with the specialized care required by all heart-transplant patients and by not ensuring his return to an outside specialist after he underwent surgery. *Miller*, 75 F.3d at 1307–08. Evidence that records from the inmate's outside physicians expressed concerns over his inadequate care, combined with "the lack of records indicating that any care was given," supported finding a question of fact on deliberate indifference. *Id.* at 1310–11. On this basis, the Eighth Circuit affirmed the district court's denial of qualified immunity on summary judgment. *Id.* at 1311.

14

Defendants argue that *Miller* is inapposite because they had "no involvement determining the appropriateness of medical intervention." (Defs.' Opp'n at 9.) True, the defendants in *Miller* were the inmate's prison physicians. *Miller*, 75 F.3d at 1310. However, central to the court's holding was the defendants' inaction despite their knowledge of the plaintiff's "particular needs," prescribed by external specialists. *Id.* at 1310. The same principle applies here.

Moreover, it is clear that Defendants cannot evade liability for failure to provide adequate medical care solely because they are not themselves physicians or because Centurion performs certain medical treatment services. *See, e.g.*, *Langford*, 614 F.3d at 460 (noting that although the defendant, the prison supervisor, was "not a medical doctor and does not personally treat inmates' medical needs, . . . [t]here is no doubt that [the defendant] has a constitutional duty to see that prisoners in his charge who need medical care receive it." (quoting *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989))); *West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody."). And again, the Court cannot consider arguments based on the details of Defendants' specific job functions because those facts are not part of the pleadings. Thus, the Court declines to dismiss Mr. Allen's claim based on the nature of Defendants' positions in the absence of a full record.[4]

---

[4] To the extent that Defendants rely on *Thorbes v. Bahl* to support their contention that Mr. Allen's right was not clearly established, this argument is unavailing. (Defs.' Reply at 11 (citing 180 F. App'x 603, 604 (8th Cir. 2006)).) The plaintiff in *Thorbes* alleged deliberate indifference based on a delay in scheduling a follow-up appointment for his

The Court finds that sufficient authority established Mr. Allen's right to have his broken hand promptly and properly treated in December 2017. The Eighth Circuit long ago recognized that intentionally failing to "arrange for treatment" of an injured hand later determined to be broken could support a finding of deliberate indifference under the Eighth Amendment. *Robinson v. Moreland*, 655 F.2d 887, 890 (8th Cir. 1981) (affirming district court's denial of defendant's motion for a directed verdict); *see also Croft*, 286 F. App'x at 956; *Murphy v. Walker*, 51 F.3d 714, 720 (7th Cir. 1995) ("[I]n the vast majority of instances, any reasonable officer ought to conclude that a broken hand is a serious injury . . . Thus, proper follow-up care should have been provided . . . [including] tak[ing] [plaintiff] in for his follow-up examination and x-rays if indicated.").

In *Robinson*, a prison guard shift supervisor ordered that an ice pack be given to an inmate for his visibly swollen, injured hand, despite the inmate's belief that his hand was broken and his request to be sent to the hospital. *Robinson*, 655 F.2d at 889–90. The

---

fractured jaw. 180 F. App'x at 604. The case is distinguishable from Mr. Allen's in several respects.

First, the court in *Thorbes* affirmed summary judgment after reviewing the full record, which lacked evidence that one defendant was involved in scheduling and that the other defendant knew of the inmate's swelling, pain, and difficulty eating during the delay. *Id.* Here, the Court does not have the benefit of a full record and has already determined that Mr. Allen has plausibly alleged that both Defendants knew critical details about his injury and his condition. Second, the inmate in *Thorbes* needed a follow-up appointment within two or three days and the appointment was instead scheduled within six days. *Id.* In Mr. Allen's case, the alleged length of the delay is much more significant—more than a month beyond Dr. Armitage's prescribed follow-up date. Third, the x-ray conducted at the initial visit in *Thorbes* was negative for a fracture or dislocation, *id.*, and here, there was never any doubt about Mr. Allen's fracture.

Considering these differences, *Thorbes* is not conclusive authority on Mr. Allen's clearly established right to medical care under the circumstances in this case.

following day, the shift supervisor informed the next shift supervisor about the injury. *Id.*
at 890. Two days later, after receiving no other medical treatment, the prison nurse
examined the inmate and referred him to the visiting physician, who only believed the hand
was badly bruised, yet sent him to the hospital for an x-ray anyway. *Id*. The x-ray revealed
a fracture which required surgery to repair. *Id.* The court held that a jury could find the
shift supervisor liable for deliberate indifference, notwithstanding his lack of involvement
after ordering the ice pack and the prison medical staff's erroneous diagnosis. *Id.*

Here, while Mr. Allen initially received medical attention after his injury, Dr.
Armitage was unable to complete treatment due to pain and swelling. (Am. Compl. ¶ 15.)
And Defendants allegedly had more information than the shift supervisor in *Robinson*: they
knew that Mr. Allen had been diagnosed with a broken hand, suffered from pain, and
needed a follow-up appointment with Dr. Armitage. (Progress Notes at 2.) Yet Defendants
failed to "arrange for treatment" for more than a month, significantly longer than the
supervisor's delay in *Robinson*. *Robinson*, 655 F.2d at 890. Although not identical,
*Robinson* has a "close correspondence" to the facts of Mr. Allen's case. *Rusness*, 31 F.4th
at 614.

In addition, it is also clearly established that "[w]hen an official denies a person
treatment that has been ordered or medication that has been prescribed, constitutional
liability may follow." *Dadd*, 827 F.3d at 757 (collecting Eighth Circuit cases); *see also*
*Zaya v. Sood*, 836 F.3d 800, 807–08 (7th Cir. 2016) ("If [the prison doctor] consciously
disregarded the risks of delaying [plaintiff's] return to [the orthopedic specialist], then his
conduct violates clearly established law under the Eighth Amendment."); *Harris v. Coweta*

17

*Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994) (finding an unexplained seven-week delay in providing prescribed diagnostic test and surgery for hand with nerve injury a violation of a clearly established Eighth Amendment right to adequate medical care); *Rhiner v. Sec'y, Fla. Dep't of Corrs.*, 696 F. App'x 930, 932 (11th Cir. 2017) (finding prison medical staff's awareness of plaintiff's need for follow-up care and unexplained lack of treatment for eleven-day and six-day stretches sufficient to state a claim of deliberate indifference); *Oliver v. Carey*, 315 F. App'x 649, 650 (9th Cir. 2009) (finding a plausible claim for deliberate indifference where doctors "failed to complete the proper paperwork or complete any follow-up on the recommended orthopedic consult while [plaintiff] continued to suffer in extreme pain").

In light of this authority, the Court finds that the contours of unreasonable delay in providing the recommended treatment for a diagnosed broken hand were defined well enough for Defendants to understand, in December 2017, that failing to ensure Mr. Allen received this care violated his constitutional right.

In sum, taking all facts as true and construing them favorably to Mr. Allen, he has plausibly alleged a violation of a constitutional right that was clearly established at the time of the violation. Defendants are therefore not entitled to qualified immunity. Accordingly, the Court denies Defendants' Motion to Dismiss.

## IV. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Pursuant to Plaintiff's voluntary dismissal, Defendants Paul Schnell and Minnesota Department of Corrections are **DISMISSED** with prejudice, as are Plaintiff's claims against them. Further, Plaintiff's claim of medical malpractice against Defendants Cheryl Piepho and Charles Brooks, Count II, is **DISMISSED** with prejudice.

2. Defendants Cheryl Piepho's and Charles Brooks' Motion to Dismiss on Plaintiff's remaining claim, Count I, is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 23, 2023                                     s/ Susan Richard Nelson
                                                           SUSAN RICHARD NELSON
                                                           United States District Judge